DAVIS, Judge.
Barbara Horn appeals the trial court’s final judgment as to partial summary judgment [1] as to the causation element of her premises liability claim for damages against Tandem Health Care of Florida, Inc. (Tandem). In her amended complaint, Horn, who was employed by one of Tandem’s contract vendors, alleged that she slipped and fell on the wet floors of Tandem’s health care facility on March 25, 1997. She immediately complained of problems with her right knee and sought medical attention. Dr. Lance Sisco performed surgery to repair a torn meniscus in Horn’s right knee on May 15, 1997. Although Horn also complained of pain in her left knee, similar repair surgery on that knee did not occur until April 19, 2001. Because of continuing pain in both of her knees, Horn underwent total knee replacement surgeries in 2005 and 2006.
Prior to trial, Tandem moved for partial summary judgment, arguing that no genuine issue of material fact existed as to the cause of Horn’s injury and her resulting bilateral knee replacement procedures. In its motion Tandem maintained that the need for Horn’s total knee replacement surgeries was caused by degenerative osteoarthritis that predated her fall at Tandem. In support of its position, Tandem quoted two of Horn’s medical witnesses, who stated that the knee replacement procedures were necessitated by the osteoar- *1168 thritic condition found in both of Horn’s knees in 2005.
The trial court granted Tandem’s motion for partial summary judgment and, in its final judgment, concluded that “the record evidence does not show a triable issues [sic] as it relates to the legal causation issues within a reasonable degree of medical certainty between the knee replacement of 11/29/2005 (right knee) and 03/07/2006 (left knee) and the trauma incident of 03/25/1997 upon which this premises liability case is predicated.”
Tandem argues on appeal, as it did before the trial court, that the knee replacement surgeries were required due to the degenerative osteoarthritis that Horn suffered in both knees, not the torn meniscus in each knee that Horn alleges resulted from her fall at Tandem. Since the doctors’ testimony indicated that Horn’s os-teoarthritic condition existed before the March 25, 1997, fall, Tandem argues that there remains no issue of fact that ties any injury resulting from the fall to the causation of the condition that necessitated the surgeries.
In support of its argument, Tandem quotes from Dr. Glen Barden’s deposition. Dr. Barden performed Horn’s knee replacement surgeries and was listed by Horn as one of her medical witnesses. Specifically, Tandem cited several questions and answers by which Dr. Barden pointedly stated that it was the degenerative osteoarthritis that led to the need for the bilateral knee replacement surgeries. Dr. Barden also agreed that even absent the meniscus tears that resulted from the 1997 fall, Horn would have needed bilateral knee replacements at some point in her life.
However, when the deposition is read as a whole, Dr. Barden’s testimony is not “irrefutable evidence” of the lack of causation, as is argued by Tandem. In fact, Dr. Barden very clearly explained that although the surgery was needed to treat the degenerative arthritic condition, the meniscus tears aggravated that condition and accelerated the need for the bilateral knee replacements:
Q. [Biased on your judgment, do you believe that there is some quantifiable amount of damage that was caused by the industrial accident of March 1997 that is seen in the degenerative joint disease process that you saw in Ms. Horn when you first saw her in October 2005?
A. Yes. I believe that one can state that from what she ... was stating. I believe at that point in time, she was still working when she had that incident in March [19]97, so that means that she was still ... functioning pretty well. And from that standpoint, I think it’s reasonable to make a judgment call on that.
Q. Okay. And what quantity or what amount of damage do you believe was caused by the industrial accident of 1997 that contributed to the degenerative joint disease process that you saw in Ms. Horn in 2005?
A. My judgment call on this would be 25 percent.
During cross-examination, Dr. Barden went on to explain what this twenty-five-percent figure represented:
Q. When you were asked to quantify the contribution of the fall on March 25th, 1997, and you did so as being 25 percent, I’d like to go back and elaborate. When you’re talking 25 percent, exactly what you meant by that 25 percent is what again, Doctor?
A. 25 percent of the total presentation as the patient presented to me and needed additional care.
Q. Came from this fall?
*1169 A. Yes.
Q. 75 percent was the degenerative process that was ongoing for however long?
A. Pre-existing was going to happen, was there, was not related in cause and effect relationship.
Based on these statements alone, we conclude that there remain issues of material fact as to whether the March 25, 1997, incident contributed to the injury that is the subject of Horn’s complaint.
Tandem also quotes from the deposition of Dr. William Cherry, another of Horn’s medical witnesses. Dr. Cherry treated Horn for her knee problems in early 2005 and later referred her to Dr. Barden for the knee replacement surgeries. Tandem used these quotes to again demonstrate that the knee replacement surgeries were necessary because of her osteoarthritic condition, which existed in both of Horn’s knees in 2005. However, as did Dr. Bar-den, Dr. Cherry specifically stated that the fall contributed to the acceleration of the degenerative process from which Horn suffered:
Q. [A]ssume that for the sake of my question that this lady had osteoarthritis. Let’s just assume that. And we suddenly have in 1997 a fall resulting in bilateral meniscus tear for which there is an excise of both sides, left and right, certainly on the right side, I’d have to check the records to be sure but an excise of the left side b[y] my recollection it was, what effect does that have if we have osteoarthritis already present based on your experience?
A. Based on my experience, and based on scientific evidence, you certainly may see an acceleration of the degenerative changes that take place in a knee joint in one that has a torn meniscus versus one that doesn’t. Okay. In that kind of case, it that situation, as long as the joint doesn’t already need knee replacement surgery, it’s reasonable to expect [to] surgically repair it whether it’s suturing repairing or surgically excising the torn part will slow down the accelerated process of osteoarthritis in the situation where a torn meniscus is present. Okay.
Now, you look at this two different ways. You got a meniscal tear, you leave it, it accelerates the process. You have a meniscal tear, you repair it by whatever means, you still have an accelerated process, just not near as accelerated as if you left the meniscal tear there and not done anything to it.
[[Image here]]
Q. Okay. Now, Doctor, can we tell for a certainty absent this fall that this lady would have needed knee replacement surgery at the time that it occurred?
[[Image here]]
A. Yeah. And could we predict based on all factors prior to her knee replacement surgery, can we predict that she would have had it at that time no matter what, not really.
Based on the deposition testimony of Drs. Barden and Cherry, we conclude that the trial court erred in granting Tandem’s motion for partial summary judgment on the issue of causation. “It is settled law that where injuries aggravate an existing ailment or develop a latent one[,] the person whose negligence caused the injury is required to respond in damages for the results of the disease as well as the original injury.” C.F. Hamblen, Inc. v. Owens, 127 Fla. 91, 172 So. 694, 696 (1937). Furthermore, Florida Standard Civil Jury Instruction 5.1(a) advises that the defendant’s negligence is the legal cause of the injury or damage if “it directly and in natural and continuous sequence produces *1170 or contributes substantially to producing” the injury or damage. (Emphasis added.)
Here, the portions of the record that Tandem maintains support its motion for partial summary judgment actually demonstrate the existence of a genuine issue of fact as to whether Horn’s fall at Tandem’s facility “contributed substantially” to the loss that is the subject of her law suit. Accordingly, we reverse the trial court’s final judgment.
Reversed and remanded for further proceedings.
WHATLEY and STRINGER, JJ„ Concur.

. The trial court entered its final judgment as to partial summary judgment after granting Tandem's motion for partial summary judgment. Because the trial court concluded that Horn had failed to prove the alleged accident was the cause of her alleged permanent injury, the trial court’s final judgment was dispos-itive of her complaint.